**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Michael David WEST, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 2007.
Filed Nov. 28, 2007.

16. Judgment on the molded verdict of $594,301.05, was entered on June 28, 2006.

William Costopoulos, Lemoyne, for appellant.

H. Stanley Rebert, Thomas J. Reilly, Asst. Dist. Attys., York, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., GANTMAN and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is a direct appeal from judgments of sentence at two criminal informations. At No. 1523 CA 2005 ("the delivery case"), Appellant was convicted of delivering cocaine. At No. 2502 CA 2005 ("the motorcycle case"), he was convicted of possessing cocaine with intent to deliver (PWID), possessing cocaine, possessing a small amount of marijuana, and possessing drug paraphernalia.

¶ 2 Appellant was sentenced on both cases in one consolidated sentencing hearing. On the delivery case, he received a mandatory minimum sentence of three to six years' incarceration. For the motorcycle case, the court imposed a mandatory minimum term of five to ten years in prison on the PWID charge and time served on the marijuana and paraphernalia counts. The court then made Appellant's sentences concurrent for an aggregate term of five to ten years' imprisonment.

¶ 3 In the delivery case, the issues are: (1) whether the trial court erred in denying Appellant's motion for a new trial based on his weight-of-the-evidence claim; (2) whether the trial court gave an incomplete "corrupt source" jury instruction; and (3) whether trial counsel was ineffective in failing to object to the aforesaid jury instruction.

¶ 4 In the motorcycle case, the issues are: (1) whether there was sufficient evidence to support Appellant's convictions for possessing cocaine and for PWID cocaine; (2) whether Appellant should be granted a new trial because an officer improperly testified that certain evidence found on Appellant indicated an intent to deliver; and (3) whether the trial court erred in denying Appellant's motion to suppress the cocaine and related evidence found in his motorcycle.

¶ 5 In each case, we affirm the judgment of sentence.

### The Delivery Case

¶ 6 The delivery case involved allegations of two distinct drug sales. The trial evidence showed the following. At the direction of the police, a confidential informant (CI) telephoned Appellant and arranged to buy two ounces of cocaine at a local restaurant. On the date of the scheduled purchase, the officers searched CI's person and vehicle, ensuring that he possessed neither drugs nor money. They then provided him with $1,900.00 to purchase the cocaine and placed a recording device on him.

¶ 7 The police followed CI to the restaurant and observed the meeting between him and Appellant at that location. Appellant entered CI's truck; the vehicle moved a short distance. Appellant then exited the truck. Thereafter, police met with CI who gave them the two ounces of cocaine he had just purchased. At trial, CI testified he bought the drugs from Appellant.

¶ 8 The officers arranged a second drug purchase. CI again phoned Appellant, asking to buy four ounces of cocaine. Appellant agreed to sell only two. At the appropriate time, the police once again searched CI and his truck to ensure he did not have drugs or money. The officers

* Retired Senior Judge assigned to the Superior Court.

provided him with $2,300.00, the price demanded by Appellant. They also placed a recording device on him. Police observed CI while he drove to Appellant's apartment. He entered and then exited the residence. The police followed CI to another location where he produced two ounces of cocaine. Thereafter, police entered the apartment but did not find Appellant. CI would later testify, at trial, that he bought the cocaine from Appellant.

¶ 9 Appellant was charged with two counts of delivering cocaine. A jury acquitted him in connection with the second incident but convicted him of delivery with regard to the first. He was later sentenced.

¶ 10 Appellant filed a direct appeal in which this Court found all of his claims waived for failing to comply with Pa.R.A.P. 1925(b). Later, after he filed a petition under the Post Conviction Relief Act ("PCRA"), the PCRA court reinstated his direct appeal rights *nunc pro tunc*. He now appeals.

■ ¶ 11 *Weight of the Evidence.* The weight given to trial evidence is a choice for the factfinder. *Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super.2007). If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007).

■ ¶ 12 When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. *Id.* at 1035, 1036. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. *Id.* at 1036. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance. *Id.*

■ ¶ 13 Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. *Commonwealth v. Hardy*, 918 A.2d 766, 776 (Pa.Super.2007). Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. *Id.* By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record. *Id.*

■ ¶ 14 In this case, Appellant contends the verdict was against the weight of the evidence because CI's testimony was "too shaky" and uncertain and was not sufficiently supported by corroborating evidence. Appellant's Brief at 42. Appellant's point is that CI was a "snitch" who had been arrested and who testified against Appellant to gain favor with the police. Appellant's Brief at 42, 47. He contends CI's testimony was self-serving and not credible. Moreover, Appellant claims the jury rejected CI's testimony with respect to the second incident and that his testimony regarding the first buy should likewise be rejected.

¶ 15 Appellant has not persuaded us that the trial court abused its discretion in denying his motion for a new trial based on the weight of the evidence. We see no evidence of bias, prejudice, partiality, ill-will, manifest unreasonableness, or a misapplication of the law. Moreover, it is

apparent that the trial court's conclusion is supported by the record. The jury was free to make credibility determinations and accept or reject CI's testimony, and all the other testimony, as it chose. In light of the evidence discussed *supra,* the trial court did not abuse its discretion by determining the guilty verdict did not shock one's conscience. Therefore, Appellant's weight claim fails.

■ ¶ 16 *Jury Charge and Counsel's Ineffectiveness.* During its charge, the court directed the jurors to view CI's testimony with disfavor because he was expecting consideration from the Commonwealth in return for his cooperation. The court also instructed the jury to examine CI's testimony closely and accept it only with care and caution. Appellant's trial counsel did not object.

¶ 17 Appellant here contends the court's instruction was inadequate. No part of a jury charge may be assigned as error unless a specific objection is made thereto before the jury deliberates. Pa.R.Crim.P. 647(B). Also, matters not raised in the trial court may not be pursued on appeal. Pa.R.A.P. 302(a). Thus, having not objected to the instruction in the trial court, Appellant cannot now raise this claim. It has been waived.

¶ 18 Nevertheless, Appellant argues counsel was ineffective in not objecting to the charge. As this case is on direct appeal, we will not decide the issue of counsel's ineffectiveness. *See Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 739 (2002). Rather, we dismiss that issue without prejudice. Appellant may raise claims of ineffectiveness in a PCRA petition. *Id.*

¶ 19 For the foregoing reasons, we affirm the judgment of sentence in the delivery case.

### The Motorcycle Case

¶ 20 The record reveals the following facts. A police officer was on patrol in York Township. At roughly 1:00 a.m., he saw a black man riding a red and black sports-style motorcycle. The man's helmet, gloves and protective riding coat were each red and black. He also wore jeans. The cyclist turned onto a drive leading into a Holiday Inn.

¶ 21 Approximately one hour later, the officer recalled there was a homicide warrant for a black man who had been operating a red and black sports bike. The officer drove to the Holiday Inn. The motorcycle he had seen earlier was in the lot. No other motorcycles were present. The officer ran the license plate number from the bike and determined it was registered to Appellant. He also determined there was an arrest warrant for Appellant for the sale of cocaine. The officer then called additional police to the scene.

¶ 22 Next to Appellant's motorcycle was a white car. Inquiring of Holiday Inn personnel, the officers learned a certain female guest had registered the car with the inn. They further determined Appellant was not a registered guest. Police had the inn clerk call the female and ask her to come to the lobby to speak with police. She did so and, while police were talking with her, Appellant exited an elevator into the lobby. He was wearing the same clothing as when the officer observed him riding the motorcycle. Appellant then identified himself by name.

¶ 23 Police arrested Appellant because of the outstanding warrant. They searched his person and a backpack he was carrying. As a result of the search, the officers seized six individual bags of marijuana, three cell phones, cigars, including one or more containing marijuana, and roughly one thousand dollars in bills,

gold coins and silver coins. Some of the bills were silver certificates.

¶ 24 The officers also seized Appellant's motorcycle and had it transported to their police department. During the course of an inventory search, police found suspected cocaine in the cycle seat. At that point, they stopped the search and secured a warrant. Pursuant to the warrant, they restarted the search, seizing, *inter alia*, a digital scale, baggies with missing corners, and cocaine, both powder and rock.

¶ 25 As a result of the foregoing incident, Appellant was charged with possession of cocaine and PWID cocaine. Initially, he also faced charges of PWID marijuana, possession of a small amount of marijuana and drug paraphernalia. Appellant proceeded to a jury trial. At that time, the Commonwealth did not proceed on the PWID marijuana charge.[1] The Commonwealth did, however, proceed on the remaining charges.

¶ 26 In addition to the testimony which we have already discussed *supra*, the trial evidence included a stipulation between the parties concerning expert testimony. The stipulation was that, if the Commonwealth called an expert to testify, the expert would opine that Appellant's possession of drugs was more consistent with intent to deliver them than with possession for personal use.

¶ 27 Following trial, Appellant was convicted of the aforesaid charges. He was later sentenced. As in his delivery case,

Appellant filed a direct appeal. This Court found his claims to be waived for failing to comply with Pa.R.A.P. 1925(b). When he filed a petition under the PCRA, the court reinstated his direct appeal rights. This appeal follows.

¶ 28 *Sufficiency of the Evidence.* For a sufficiency argument, this Court's standard of review is as follows:

> ... [W]e consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment or that of the factfinder.

*Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super.2006) (internal citations omitted).

¶ 29 Any doubts concerning an appellant's guilt were to be resolved by the trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn therefrom. *Commonwealth v. Pitner*, 928 A.2d 1104, 1108 (Pa.Super.2007).

¶ 30 With respect to sufficiency, Appellant's contention is that the Com-

---

1. At trial, the Commonwealth agreed to amend the PWID marijuana charge (35 P.S. § 780–113(a)(30)) to simple possession (35 P.S. § 780–113(a)(16)). However, during the jury charge relating to marijuana, the trial court instructed the jury only on possession of a small amount of marijuana (35 P.S. § 780–113(a)(31)) and not on simple possession thereof. After the jury charge was given, the Commonwealth, at sidebar, noted that the agreement was to reduce the PWID marijua-

na to simple possession, not to possession of a small amount. At that point, the trial court asked, "What's the difference? It's still a small amount. It's under 30 grams, right?" N.T., 09/06/05, at 149. The sidebar ended without further discussion. Thus, while the record is not entirely clear, it seems the actual amount of marijuana was indeed less than 30 grams and the Commonwealth was satisfied with a jury instruction limited to a small amount.

monwealth did not prove he actually or constructively possessed the cocaine and, therefore, his cocaine-related convictions cannot stand. When controlled substances are not found on the person of the accused, the Commonwealth must prove constructive possession—that is, that the person had the ability and intent to exercise conscious control or dominion over the substance. *Commonwealth v. Dargan,* 897 A.2d 496, 503, 504 (Pa.Super.2006).

¶ 31 Appellant is right that the cocaine was not found on his person. However, viewed most favorably to the Commonwealth, the evidence supports a finding of constructive possession. The officer identified Appellant as the person who was riding the motorcycle not much more than an hour before it was seized. The motorcycle belonged to Appellant. The cocaine was in one of its compartments. It appeared that Appellant was on his way to the motorcycle when he was arrested in the lobby. Based on this evidence, a reasonable jury could conclude that Appellant had the ability and intent to exercise conscious control and dominion over cocaine that was in his motorcycle which he had recently ridden. Appellant's sufficiency claim lacks merit.

¶ 32 *Improper Testimony—New trial.* At trial, the prosecutor asked the arresting officer whether the police seized a backpack from Appellant during the arrest. When answering the question, the officer gave an unresponsive opinion that the small bags of marijuana and/or large amount of cash found on Appellant when he was arrested indicated an intent to deliver. Appellant made an unspecified objection to this testimony which objection the trial court sustained. Appellant did not ask for a mistrial.

¶ 33 On this appeal, Appellant contends the officer's unsolicited opinion constituted a form of prosecutorial miscon-

duct which entitles him to a new trial. During the trial, Appellant sought relief by way of objection. He obtained the relief he sought. He did not ask for a mistrial. Having not preserved his request with the trial court, he cannot now raise it. *See* Pa.R.A.P. 302(a).

¶ 34 Even if Appellant's claim had been preserved, however, he would not be entitled to relief. A mistrial is appropriate only where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair, impartial trial. *Commonwealth v. Messersmith,* 860 A.2d 1078, 1092 (Pa.Super.2004). In light of all the evidence presented at trial, the limited remark of the officer—to which an objection was sustained—cannot reasonably be said to have deprived Appellant of a fair and impartial trial.

¶ 35 *Suppression.* Pretrial, Appellant filed a motion to suppress the cocaine and other evidence seized from his motorcycle. At a hearing on the motion, an officer gave two reasons for the seizure of the motorcycle. First, he testified to a departmental policy dictating that Appellant's motorcycle be impounded solely because Appellant was being taken to jail. Second, he testified the cycle was seized because it was part of a drug vending operation.

¶ 36 The trial court made various findings and reasoned as follows. One of the officers saw Appellant drive his motorcycle to the Holiday Inn. When Appellant was arrested on the unrelated warrant in the lobby of the Holiday Inn, the officers found six bags of marijuana, three cell phones and a large amount of cash on his person, and the police had reason to believe Appellant was about to drive his motorcycle. As such, the police also had probable cause to believe the motorcycle had been used or was about to be used to

transport controlled substances, namely the marijuana found in Appellant's actual possession.

¶ 37 The trial court then concluded the police were authorized to seize the motorcycle without a warrant pursuant to 42 Pa.C.S.A. § 6801 (authorizing seizure of vehicles used or intended for use in the transport of controlled substances). Moreover, the court determined that, following the seizure of the motorcycle, the initial search (*i.e.*, the warrantless search) of the cycle was a permissible inventory search. As such, the court denied the suppression motion.

¶ 38 Appellant complains the seizure of the motorcycle and the search thereof was illegal. He argues the evidence found therein should have been suppressed.

¶ 39 Numerous legal principles inform our analysis of this issue. We note the Forfeiture Statute provides, in pertinent part, the following:

**§ 6801. Controlled substances forfeiture**

(a) **Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

(1) All drug paraphernalia, controlled substances or other drugs which have been manufactured, distributed, dispensed or acquired in violation of ... The Controlled Substance, Drug, Device and Cosmetic Act.

(2) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance or other drug in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

(3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2).

(4) All conveyances, including aircraft, vehicles or vessels, which are used or are intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of, property described in paragraph (1) or (2), except that:

\* \* \* \* \*

(iv) no conveyance shall be forfeited under this section for violation of section 13(a)(31) [involving small amount of marijuana] of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S.A. § 6801(a) (footnotes omitted).

Additionally, the statute includes the following provision:

(b) **Process and seizure.**—Property subject to forfeiture under this chapter may be seized by the law enforcement authority upon process issued by any court of common pleas having jurisdiction over the property. Seizure without process may be made if:

\* \* \* \* \* \*

(4) there is probable cause to believe that the property has been used or is intended to be used in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa.C.S.A. § 6801(b).

¶ 40 As a general rule, searches and seizures without a warrant are unreasonable for constitutional purposes. *Ariondo*, 580 A.2d at 344. However, according to the foregoing statutory provisions, police may, even without a warrant, seize a vehicle, such as a motorcycle, when they have probable cause to believe the vehicle has been used or is intended to be used to transport controlled substances or to facili-

tate the possession, concealment or sale of controlled substances. *See U.S. v. Salmon,* 944 F.2d 1106, 1119 (3d Cir.1991) (finding that the seizure of a vehicle used to facilitate a drug transaction is authorized by the Forfeiture Statute and is consistent with Fourth Amendment standards); *Commonwealth v. One 1993 Pontiac Trans Am,* 809 A.2d 444, 447 n. 2 (Pa.Cmwlth. 2002) (noting vehicle may be seized under the Forfeiture Statute based on presence of drug paraphernalia when evidence showed owner was engaged in drug trafficking); 42 Pa.C.S.A. § 6801(a)(4), (b)(4). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has trustworthy information are sufficient to warrant a person of reasonable caution the belief that an offense has been or is being committed. *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226, 228 n. 4 (1996).

¶ 41 Although such a vehicle may be validly seized without process under the Forfeiture Act, a person's property rights therein are not extinguished until a court holds forfeiture proceedings and orders the forfeiture. *Commonwealth v. Standen,* 450 Pa.Super. 292, 675 A.2d 1273, 1278 (1996). Accordingly, a person whose vehicle has been seized pursuant to 42 Pa.C.S.A. § 6801(a)(4), (b)(4) retains a legitimate expectation of privacy therein until the forfeiture is complete. *Standen,* 675 A.2d at 1278. Therefore, a warrantless search of that validly seized vehicle would violate the person's federal and state constitutional rights absent some independent exception to the warrant requirement which exception justifies the warrantless search. *See Salmon,* 944 F.2d at 1119 (holding that the search of a vehicle presents a Fourth Amendment question independent of the validity of the seizure of that vehicle under the Forfeiture Act); *Standen,* 675 A.2d at 1278 (holding

that legitimate expectation of privacy in vehicle continues even after seizure under the Forfeiture Act); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 900 (1995) (holding that warrantless search of vehicle violates PA. CONST. art. I, § 8 absent a valid exception); *Ariondo,* 580 A.2d at 344 (holding that warrantless searches and seizures are generally unreasonable for constitutional purposes); U.S. CONST. amend. IV; PA. CONST. art. I, § 8.

¶ 42 One exception to the warrant requirement is the inventory search. *Commonwealth v. Hennigan,* 753 A.2d 245, 254 (Pa.Super.2000). A warrantless inventory search is permitted where: (1) police have legally impounded the vehicle; and (2) they conduct the search in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. *Id.* at 255. The purpose of this type of search is not to find evidence of crime. *Id.* at 254. Rather, it is intended: (1) to protect the owner's property while in official custody; (2) to protect the police against claims of lost or stolen property; (3) to protect the police from danger; and/or (4) to help the police in determining whether the vehicle was stolen and abandoned. *Id.* at 255.

¶ 43 In *Hennigan,* this Court explained that a court considering the validity of an inventory search must first decide if police have lawful custody thereof and, if they do, the court must then consider, *inter alia,* the facts and circumstances relating to the scope of the search, the procedure actually utilized during the search and whether any items were in plain view. *Id.* at 256, 257. Moreover, the Commonwealth has the burden to prove the legitimacy of the search. *Id.* at 255. Thus, in accordance with the principles we have just enunciated, the Commonwealth must first establish that the police lawfully impounded the vehicle and second prove that, while searching the

vehicle, they followed a reasonable, standard policy which did not exceed what was necessary for the care-taking objectives of the search. *Commonwealth v. Henley*, 909 A.2d 352, 359 (Pa.Super.2006); *see Commonwealth v. Anderl*, 329 Pa.Super. 69, 477 A.2d 1356, 1360 (1984) (holding that purported inventory search behind seat cushions of a vehicle exceeded the care-taking purposes and was intended to uncover criminal evidence).

¶ 44 The policy governing the scope of the search must not permit officers to go beyond what is needed to inventory the contents of the vehicle. *Hennigan*, 753 A.2d at 256, 257. As such, the police must not have unlimited discretion in determining the extent of the actual search. *Salmon*, 944 F.2d at 1120.

¶ 45 Finally, we recall our standard of review for suppression questions. When considering the denial of a suppression motion, this Court's review is limited to determining whether the court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Van Winkle*, 880 A.2d 1280, 1282 (Pa.Super.2005). Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. *Id.* at 1283. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous. *Id.* Equipped with the foregoing principles, we turn to the suppression ruling in this case.

¶ 46 We will briefly address the officer's first stated reason for the seizure of the bike—namely, a department policy requiring seizure upon Appellant's arrest. Assuming the policy was as sweeping as the transcript may be read to indicate, we reject the notion that police may seize a vehicle merely because they arrest the owner. We observe as well that the testimony in this case did not indicate that the motorcycle was blocking traffic, was causing a hazard or was illegally parked except, perhaps, to the extent that Appellant was not a Holiday Inn guest. There is no evidence that Holiday Inn personnel asked that the bike be towed. Thus, the seizure cannot be justified on any of those grounds. Nevertheless, for the reasons that follow, we believe the seizure was appropriate because it was conducted pursuant to the Forfeiture Act.

¶ 47 We note the record supports the trial court's findings regarding the facts. When police arrested Appellant pursuant to the warrant, they learned that he possessed the aforementioned marijuana, cash, cell phones and cigars. Not long before the arrest, an officer had seen Appellant driving a motorcycle toward the inn while wearing certain protective motorcycle clothing. When Appellant exited the elevator into the lobby, police observed he was wearing that same protective clothing, including a motorcycle helmet. Police had determined that the motorcycle was registered to Michael West. Appellant identified himself to police as Michael West.

¶ 48 Based on the foregoing facts and circumstances, a person of reasonable caution was justified in believing that Appellant had driven and/or was about to drive the motorcycle that was in the parking lot to transport marijuana and drug paraphernalia. Moreover, in light of the packaging of the marijuana, the cell phones and the cash, it was reasonable to believe he had operated and/or was about to operate the motorcycle with the intent to deliver marijuana. We understand that cigars, particularly one or more reamed and then filled with marijuana, may suggest a person is

using marijuana. Also, multiple bags of marijuana might indicate a person is selling such bags or has just purchased such bags. However, when viewing all of the items of evidence together, including the significant amount of money and multiple cell phones, we find it was a reasonable conclusion in this case to believe Appellant was engaged in PWID. For the foregoing reasons, the police had probable cause to believe the motorcycle had been used and was intended to be used in violation of the Controlled Substance, Drug, Device and Cosmetic Act.

¶ 49 On this point, we observe the following. Aside from the cocaine offenses, Appellant was eventually convicted in this case of possessing a small amount of marijuana and possession of drug paraphernalia. He was not convicted of PWID marijuana, although he was originally charged with that offense. We need to decide if these facts affect the validity of the seizure of the motorcycle. For the reasons that follow, we find they do not change our conclusion that the police had probable cause justifying the seizure of the motorcycle.

¶ 50 A vehicle may not be forfeited under 42 Pa.C.S.A. § 6801 if the drug violation to which it is connected is merely to a violation of 35 P.S. § 780–113(a)(31). *Pontiac Trans Am*, 809 A.2d at 446; 42 Pa.C.S.A. § 6801(a)(4)(iv). Section 780–113(a)(31) prohibits the possession of a small amount (thirty grams or less) of marijuana, the intent to distribute, without selling, a small amount of marijuana, and the distribution, without selling, of a small amount. Additionally, a vehicle may not be forfeited where the violation is possession of drug paraphernalia if that paraphernalia is connected to nothing other

than a small amount of marijuana. *Pontiac Trans Am*, 809 A.2d at 446. Because such a vehicle would not be subject to forfeiture, it could not be validly seized under 42 Pa.C.S.A. § 6801(b). We reach this conclusion because the § 6801(b) only authorizes the seizure of property subject to forfeiture. 42 Pa.C.S.A. § 6801(b).

¶ 51 However, while Appellant's marijuana convictions were only for possessing a small amount and paraphernalia (*i.e.*, cigars and/or baggies), he was nonetheless originally charged with PWID. Moreover, we find that, at the time police arrested Appellant and seized his motorcycle, they had probable cause to believe he was involved in PWID marijuana. Moreover, in light of the substantial cash found on his person, there was probable cause to believe that the intended distribution was for sale. These circumstances remove Appellant's case from the small-amount exception to forfeiture found in 42 Pa.C.S.A. § 6801(a)(4)(iv). Thus, the fact that Appellant's ultimate marijuana-related convictions were limited to possession of a small amount and possession of paraphernalia does not change our conclusion that the seizure under the Forfeiture Act was legal.

¶ 52 Having found the seizure of the vehicle to be valid, we must decide if the search thereof was legitimate. We agree that, because the police had lawful possession of the vehicle pursuant to the seizure under the Forfeiture Act, they would have been permitted to undertake a valid inventory search as an exception to the warrant requirement. At the suppression hearing, the arresting officer testified but the officer who conducted the inventory search did not do so.[2] The Common-

---

2. After the arresting officer testified, the Commonwealth started to call the officer who searched the cycle. The court then inquired as to why the Commonwealth was doing so. The suppression transcript contains no discussion on this point. The transcript also

wealth did not offer testimony explaining the policy and full manner in which the inventory search was conducted. The arresting officer testified that cocaine was found during the inventory search in the seat compartment, that the search was then stopped, and that police thereafter obtained a warrant to continue searching.

¶ 53 As we noted *supra,* the arresting officer did testify to a departmental policy of impounding vehicles when the owner was being arrested and taken to jail, but that testimony is irrelevant to the issue of how searches are to be conducted once a vehicle is in custody. *Salmon,* 944 F.2d at 1121 (holding that court need not decide the sufficiency of a policy governing the decision whether to impound a vehicle where the government does not point to standardized criteria or routine explaining the scope of an inventory search to be conducted after the seizure). Moreover, as we also discussed *supra,* we are satisfied that the seizure of the vehicle was legal by virtue of the Forfeiture Act, not because of any departmental policy concerning seizures upon arrest. Thus, at this juncture in our analysis, we are concerned not with the legality of the seizure of the cycle but, rather, with Commonwealth's burden to demonstrate that the inventory search of the validly seized vehicle was conducted pursuant to a reasonable, standardized policy for the inventorying of the contents. There being no evidence on this point, the Commonwealth failed to meet its burden.

¶ 54 One might be tempted to argue that the Commonwealth's failure to adduce evidence of such a departmental policy is irrelevant because it appears in this case that the police merely opened the seat compartment and found cocaine, an action which, on its face, would seem to be consis-

tent with the goals of an inventory search. We reject this simplistic approach. The suppression transcript does not reveal how many compartments or sub-compartments, under the seat or otherwise, the motorcycle may have had. Also, the suppression testimony did not reveal what was required to enter the particular compartment in which the cocaine was found, although the trial transcript suggests the seat compartment was locked. It appears the cocaine was in one or more bags and it is not entirely certain whether the bag(s) needed to be opened to determine it or they contained cocaine. *See Florida v. Wells,* 495 U.S. 1, 4, 5, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) (holding that, where police had no standard procedure for opening closed containers found during inventory searches, marijuana found in a closed suitcase was properly suppressed).

¶ 55 In any event, however, the suppression transcript simply does not contain testimony showing the department had in place and employed a standard, reasonable policy when searching the vehicle. The Commonwealth had the burden to demonstrate the particulars of that policy and to show the search was done in accordance therewith. Having not done so, the search cannot be upheld as a valid inventory search.

¶ 56 Even still, a question remains as to whether the warrant might justify the second (*i.e.,* warrant-driven) search of the motorcycle in spite of the illegal inventory search. If a warrant is secured by exploiting illegal police conduct, this Court must decide whether, after excising the tainted information, the warrant was still supported by probable cause. *Commonwealth v. Hernandez,* 892 A.2d 11, 20 (Pa.Super.2006), *appeal grant-*

does not reveal any objection by the Commonwealth or any further efforts to have the

second officer testify. The court then rendered its decision on the motion.

*ed,* 588 Pa. 777, 906 A.2d 539 (2006). If the remaining, untainted information did provide probable cause, the warrant-driven search is valid despite the inclusion of illegally obtained information in the affidavit. *Commonwealth v. Ariondo,* 397 Pa.Super. 364, 580 A.2d 341, 349 (1990). Indeed, if the warrant-driven search is valid, authorities may seize even evidence that may have been initially discovered during the earlier illegal police conduct. *See id.* By contrast, if, absent the illegally obtained information, there was no probable cause, then the warrant does not validate the search. *Hernandez,* 892 A.2d at 21.

¶ 57 To reach a determination, we consider the totality of the untainted information in the affidavit. *Id.* at 20. The issue is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Commonwealth v. Murphy,* 916 A.2d 679, 682 (Pa.Super.2007). Probable cause does not require a *prima facie* showing of criminal activity. *Commonwealth v. Zelasny,* 430 Pa.Super. 585, 635 A.2d 630, 632, 633 (1993). A warrant is to be read in a practical, common sense fashion, not a grudging manner. *Id.* at 632. We will uphold a finding of probable cause if there was a substantial basis for that finding. *Id.* at 633.

¶ 58 The affidavit supporting the application for the search warrant contained several lines discussing the inventory search. The lines that merely indicate the occurrence of such a search are not, by themselves, of any significant consequence to our analysis. However, the affidavit also states:

> Corporal J. Good advised this officer that upon conducting said inventory a baggie of white powder (suspected cocain) [sic] was discovered at the beginning of the inventory. After discovering the baggie of white powder Corporal J. Good then terminated the inventory in order to notify this officer to obtain a search warrant.

Affidavit, 10/07/04, at 1.

¶ 59 The affidavit then explains that another officer utilized a drug-detection dog to sniff the exterior of the motorcycle. The dog alerted twice when doing so.

¶ 60 As to the averments regarding the cocaine found during the inventory, they were tainted and must be removed from our consideration of probable cause. We find the same is true with respect to the alerts made by the dog. We reach this conclusion because the Commonwealth offered no evidence to prove the dog was employed or would have been employed had it not been for the fact that the officer conducting the inventory found the cocaine. Additionally, we find the full context of the affidavit shows, without stating explicitly, that police employed the K–9 solely because the cocaine was discovered. For example, the paragraph discussing the dog's alert immediately follows the paragraph discussing the discovery of the cocaine during the inventory search. While the order of paragraphs in an affidavit might not always reveal with absolute certainty the reasons or order in which police took certain steps, we believe that, in this case, police used the dog only because they found the cocaine. We are thus left to consider the remaining averments in the affidavit.

¶ 61 The remaining, untainted averments in the warrant recount the facts (substantially as we discussed them *supra*) leading up to and including the arrest and search of Appellant in the Holiday Inn lobby. Additionally, the affidavit alleges that the outstanding warrant upon which Appellant was arrested in the lobby was for selling cocaine.

¶ 62 When read in a common sense fashion, the untainted portions of the affidavit reveal a fair probability that controlled substances would be found in the motorcycle. Appellant had driven the motorcycle to the inn. He had numerous bags of marijuana, substantial cash and contraband on his person and in his backpack at a time when he was about to drive the cycle again.

¶ 63 The application for the warrant identified marijuana and cocaine as items to be sought and seized. It also listed "other drugs," "paraphernalia" and including scales, cash and other "... items relating to the possession, distribution and[/]or sales of illegal narcotics." Application, 10/07/04, at 1. The concluding paragraph of the affidavit asserted the affiant's belief that the cycle might contain evidence of "contraband and/or distribution of contraband." Affidavit, 10/07/04, at 2.

¶ 64 We find, based on the untainted portions of the affidavit, that it was reasonable to conclude that the cycle might well contain marijuana, cocaine and/or other contraband, whether Appellant intended merely to possess such contraband or to distribute it. Thus, we find there was a substantial basis in the affidavit, absent the tainted information obtained during the invalid inventory search, to find probable cause that controlled substances and/or other contraband would be found in the motorcycle. Therefore, all evidence, including the cocaine, seized from the motorcycle pursuant to the execution of the warrant was lawfully obtained.

¶ 65 Accordingly, we affirm the trial court's denial of the suppression motion, albeit on grounds other than those given by the court. *See Commonwealth v. Constant,* 925 A.2d 810, 817 n. 2 (Pa.Super.2007) (affirming on grounds different than those given by the trial court). In light of the foregoing analysis, we affirm Appellant's judgment of sentence in the motorcycle case.

¶ 66 Judgments of sentence affirmed.

¶ 67 Judge GANTMAN concurs in the result.