J-A18039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARL ANTHONY BREVARD | : | |
| | : | |
| Appellant | : | No. 947 WDA 2022 |

Appeal from the Judgment of Sentence Entered June 22, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006007-2021

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED; December 5, 2023**

Carl Anthony Brevard appeals from his judgment of sentence for convictions[1] arising from a police chase and car crash. He challenges the denial of his suppression motion and the sufficiency of the evidence to sustain his conviction for driving under suspension. After careful review, we reverse on both challenges.

The suppression court summarized the facts presented at the hearing[2]:

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1) (persons not to possess firearms), 6106(a)(1) (carrying a firearm without a license), 2705 (recklessly endangering another person); 35 P.S. § 780-113(a)(32) (possessing drug paraphernalia); 75 Pa.C.S.A. §§ 3733(a) (fleeing or attempting to elude officer), 1543(a) (driving while operating privilege is suspended or revoked), 3736(a) (reckless driving), 3714(a) (careless driving), 3361 (driving at safe speed).

[2] Pennsylvania Rule of Criminal Procedure 581(I) mandates that "At the conclusion of [a suppression] hearing, the judge **shall** enter on the record a
*(Footnote Continued Next Page)*

[O]n June 25, 2021, . . . [a] vehicle driven by [Brevard] was "clocked" driving at 40 miles per hour in a 25 miles per hour speed zone. Officers attempted to conduct a traffic stop[,] and [Brevard's] vehicle initially pulled over. As officers were about to alight from their vehicle, [Brevard's] vehicle sped off. Officer [Susalla] followed the vehicle and observed it . . . crash into another vehicle. . . . After [Brevard] crashed his vehicle, [he] was removed from his vehicle and identified. His vehicle was not operable and[,] pursuant to the departmental policy of the Edgewood Police Department, it was towed from the scene. Pursuant to their departmental policy concerning towed vehicles, the police conducted an inventory search of the vehicle[,] and a .380 semiautomatic handgun [and a small backpack containing bags of marijuana were] recovered from the vehicle. Officer Susalla from the Edgewood Police Department prepared a departmental tow slip noting the items located during the inventory search.

Suppression Court Opinion, 11/29/22, at 2–3.[3]

Notably, Officer Roznick[4] conducted the search of Brevard's vehicle, but Officer Susalla was the only witness at the suppression hearing. Officer Susalla testified on direct examination that he watched Officer Roznick inventory Brevard's vehicle. But, on cross-examination, he acknowledged that

_____

statement of findings of fact and conclusions of law . . . ." **Commonwealth v. Sharaif**, 205 A.3d 1286, 1289 (Pa. Super. 2019). Filing an opinion under Pennsylvania Rule of Appellate Procedure 1925(a) "is no substitute" for compliance with Rule 581(I). **Commonwealth v. Grundza**, 819 A.2d 66, 68 n.1 (Pa. Super. 2003). However, because the opinion in this case contains a factual summary and the parties have not challenged the court's failure to put its factual findings on the record at the conclusion of the suppression hearing, we will review based on these facts. **Id.** (citing **Commonwealth v. Reppert**, 814 A.2d 1196, 1200 (Pa. Super. 2002)).

[3] The suppression court drew facts from both Officer Susalla's testimony and the affidavit of probable cause in support of the criminal complaint. Based on the scope of our review, we have limited the above quotation to those facts that were at least arguably supported by evidence at the suppression hearing.

[4] Officer Roznick's first name does not appear in the certified record.

- 2 -

while he was in the area when Officer Roznick conducted the search, he "wasn't watching him." N.T., 2/16/22, at 17. Therefore, Officer Susalla did not observe where in the vehicle Officer Roznick found the gun. *Id.* at 17–18, 20. Nor did Officer Susalla describe the procedure or scope of the search.

Officer Susalla further testified that Brevard's vehicle was "pretty much empty other than small personal items, nothing of value." *Id.* at 11. However, he "[did not] recall" whether Brevard's vehicle contained any items other than the contraband, such as a gold chain with a pendant, a computer keyboard, or tools. *Id.* at 21. Officer Susalla testified that he did not suspect that there was a firearm in the vehicle until one was found during the inventory search. *Id.* at 23–24. Once the gun was found, he checked it and learned that it was stolen. *Id.* at 19–20.

Regarding the police department policy on towing and inventory searches, Officer Susalla testified that he had reviewed the policy. *Id.* at 9, 21–22. He said the policy is to write on a "tow slip" any items that are removed from a vehicle and "items of value that shouldn't be left in the car so there's no recourse down the road." *Id.* at 11. However, he was "not sure of all of the verbiage" from the policy. *Id.* Officer Susalla did not state what the policy provided about the procedure and scope of an inventory search. The Commonwealth did not introduce a written policy into evidence.

Finally, Officer Susalla filled out a tow slip based on the items that Officer Roznick found. *Id.* at 10. In the space marked "Inventory All Items of Value Found In or On the Vehicle to Include the Trunk," Officer Susalla listed the

"recovered hi-point 9mm gun stolen out of Wilkinsburg" and the "recovered small backpack with multiple bag[s] of marijuana." Tow Slip, 6/25/21 (Suppression Exhibit 1). He did not list anything else. *Id.*

Following this testimony, the suppression court heard argument. The court found that even though the car contained other personal items, those items were not of sufficient value that they had to be included on the tow slip. It reasoned that the gun was discovered during a valid inventory search:

> The officers generally work together. That's what they do. They always rely on each other. If you do this part, I'll do that part. An officer calls and says, hey, there's a car speeding down the road. The other officer is going to have to rely on that to go see what's going on with that car.
>
> In this case, we have a crash, a disabling crash, that involves not just [Brevard's] vehicle, but another one. And under the circumstances, I don't see anything unreasonable about what the officers did here.

*Id.* at 34–35. Therefore, the court denied Brevard's motion to suppress.

The case proceeded immediately to a stipulated non-jury trial based on the evidence at the suppression hearing and the affidavit of probable cause attached to the criminal complaint. The court found Brevard guilty of the above offenses. On June 22, 2022, the court sentenced Brevard to an aggregate term of 8 to 16 years of confinement and a $200.00 fine.

Brevard timely appealed.[5] Both he and the suppression court complied with Pennsylvania Rule of Appellate Procedure 1925. Brevard's 1925(b) concise statement identified five errors, which he has narrowed to two issues on appeal:

> I.  Did the trial court err in denying suppression because the search of Mr. Brevard's vehicle was not a valid inventory search that was done in accordance with reasonable, standard police procedures?
>
> II. Was the evidence . . . insufficient to sustain the conviction at Count 7 – driving while operating privilege is suspended or revoked – as the Commonwealth did not present any evidence that Mr. Brevard's operating privilege was suspended or revoked?

Brevard's Brief at 6 (capitalization omitted).

---

[5] Brevard was sentenced on June 22, 2022.  He had either 30 days to file a notice of appeal (July 22, 2022) or 10 days to file a post-sentence motion (July 5, 2022, *see* 1 Pa.C.S.A. § 1908).  Pa.R.Crim.P. 720(A)(1), (3).  On July 11, 2022, Brevard filed a post-sentence motion to reconsider his sentence and a petition to accept that motion *nunc pro tunc*.  On July 21, 2022, the trial court granted Brevard's petition to file a post-sentence motion *nunc pro tunc*. It directed him to file a post-sentence motion within 14 days, *i.e.*, by August 4, 2022.

On July 22, 2022, Brevard filed a notice of appeal, which this Court docketed at No. 859 WDA 2022.  On August 2, 2022, the trial court denied Brevard's reconsideration motion "as moot" based on the pending appeal.  On August 11, 2022, Brevard discontinued his first appeal and filed another notice of appeal with the trial court, from both his judgment of sentence and the denial of his reconsideration motion.  We treat this notice of appeal as timely. ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128 (Pa. Super. 2003).  We remind counsel that the appeal lies only from the judgment of sentence, which is made final by the denial of post-sentence motions.  ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citing ***Commonwealth v. Chamberlain***, 658 A.2d 395, 397 (Pa. Super. 1995)).

Brevard's first issue concerns the denial of his motion to suppress evidence. On suppression issues, this Court's standard of review:

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. McFarland***, 278 A.3d 369, 377 (Pa. Super. 2022) (quoting ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017)). At a suppression hearing, "it is the Commonwealth's burden to present evidence that the defendant's constitutional rights were not infringed." ***Id.*** (quoting ***Commonwealth v. Enimpah***, 106 A.3d 695, 701 (Pa. 2014)); ***see*** Pa.R. Crim.P. 581(H).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the right of each individual to be let alone." ***Commonwealth v. Smith***, 285 A.3d 328, 332 (Pa. Super. 2022) (quoting ***Commonwealth v. By***, 812 A.2d 1250, 1254 (Pa. Super. 2002)). A search conducted without a warrant is presumptively unreasonable unless it meets one of the "few specifically established, well-delineated exceptions." ***Id.*** (quoting ***Commonwealth v. McCree***, 924 A.2d

621, 627 (Pa. 2007)). Relevant here, these exceptions include an inventory search of a vehicle. *Commonwealth v. Thompson*, 289 A.3d 1104, 1107 (Pa. Super. 2023) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)), *allocatur granted*, No. 85 MAP 2023, 2023 WL 5028963 (Pa. Aug. 8, 2023).[6]

A valid inventory search does not require probable cause and is thus "doctrinally distinct" from an investigative search for evidence of a crime. *Id.* at 1109. The purposes of an inventory search include "(1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned." *Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013) (citing *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)).

To prove that items were taken during a valid inventory search, the Commonwealth must establish that "(1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying [its] contents." *Id.* (citing *Opperman*, 428 U.S. at 375). In other words, (1) "the vehicle is lawfully in the custody of police" and (2) "police are able to show that the search was in fact a search conducted for the purposes of protection of the

---

[6] The Supreme Court granted review in *Thompson* to determine whether an inventory search is an exception to the rule in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). This Court's opinion in *Thompson* remains valid pending disposition by the Supreme Court.

owner's property while it remains in police custody." ***Commonwealth v. White***, 669 A.2d 896, 903 (Pa. 1995) (citing ***Commonwealth v. Timko***, 417 A.2d 620 (Pa. 1980)).

The first requirement, which turns on the authority of the police to impound the vehicle, is not at issue in this case.

Brevard challenges only the second requirement, whether the police established that they conducted a reasonable inventory search. "An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." ***Lagenella***, 83 A.3d at 103 (quoting ***Commonwealth v. Henley***, 909 A.2d 352, 359 (Pa. Super. 2006) (*en banc*)).

To determine the purpose of a search, a suppression court "must consider" the following factors: "the scope of the search, the procedure utilized in the search, whether any items of value were in plain view, the reasons for and nature of the custody [of the vehicle], the anticipated length of the custody," and any other important facts. ***Commonwealth v. Hennigan***, 753 A.2d 245, 256 (Pa. Super. 2000) (quoting ***Commonwealth v. Brandt***, 366 A.2d 1238, 1242 (Pa. Super. 1976) (*en banc*)). Weighing all the facts and circumstances, the court then determines whether the search was for inventory or investigative purposes. ***Id.***

> For example, if while taking inventory of the contents of the car, the police remove the seats, rip open the upholstery and find contraband, the evidence must be suppressed—not because the inventory [search] was unreasonable but rather because it is apparent that the police were not conducting an inventory

pursuant to the objectives laid down in **Opperman**, but were searching for incriminating evidence.

**Commonwealth v. Gatlos**, 76 A.3d 44, 56 (Pa. Super. 2013) (quoting

**Brandt**, 366 A.2d at 1242 n.7).

Even when police have authority to impound a vehicle, the Commonwealth still must prove that the police performed a valid inventory search. If not, the evidence must be suppressed *See Commonwealth v. West*, 937 A.2d 516, 529 (Pa. Super. 2007). In **West**, the police took lawful possession of a motorcycle. **Id.** at 523, 528. However, they could not show that the search was a valid inventory search. At the suppression hearing, the officer who conducted an inventory search of the motorcycle did not testify; instead, the Commonwealth presented testimony from the officer who had arrested the defendant. **Id.** at 528. Although the arresting officer testified that the department followed a policy to impound arrestees' vehicles and that bags of cocaine were found in the motorcycle seat compartment, that officer did not explain "the policy and full manner in which the inventory search was conducted." **Id.** at 529 (holding testimony about an impoundment policy "irrelevant to the issue of how searches are to be conducted once a vehicle is in custody").

In **West**, we held that the Commonwealth failed to demonstrate that the inventory search followed a reasonable, standardized policy to inventory the contents of the validly seized vehicle. **Id.** Notably, it was not enough that "merely open[ing] the seat compartment" seemed consistent with an inventory purpose. **Id.** There was no evidence about how many

compartments the motorcycle had, whether the seat compartment was locked, or whether the officer had to open the bags to determine if they contained cocaine, nor was there evidence that "the department had in place and employed a standard, reasonable policy" to search the motorcycle. *Id.* "The Commonwealth had the burden to demonstrate the particulars of that policy and to show the search was done in accordance therewith." *Id.* Having not done so, we concluded that the search could not be upheld as a valid inventory search. *Id.*[7]

Turning to the search in this case, the suppression court explained why it denied Brevard's motion to suppress:

> The record reflects that the inventory search in this case was occasioned by [Brevard's] clear violation of the vehicle code by speeding and crashing his vehicle and because his vehicle was inoperable and had to be towed from the scene after he had been placed under arrest. Officer Susalla testified that he attempted to conduct a valid traffic stop to cite [Brevard] for speeding. However, [Brevard] crashed his vehicle during his attempts to flee the officers. Consistent with departmental policy, [the] officer called for the vehicle to be towed. Officers dutifully took necessary steps to remove a safety hazard from the roadway. Officer Susalla testified about the Edgewood Police Department's policy taking an inventory of a vehicle that requires towing. Pursuant to this same policy, officers were required to conduct an inventory search to protect [Brevard's] property as well as protect himself and others acting on behalf of the government from any risks associated with the caretaking of [Brevard's] property. The officers were not

---

[7] In *West*, police found cocaine under the motorcycle seat, stopped searching, and obtained a search warrant before continuing the search. 937 A.2d at 523. Ultimately, this Court upheld the denial of suppression because the warrant, without tainted portions, provided probable cause to search. *Id.* at 529–31. Here, the police did not obtain a warrant to search Brevard's vehicle. They rely solely on the inventory search to justify the seizure of Brevard's items.

seeking evidence of a crime at the time of the inventory search and the inventory search was, therefore, proper.

Suppression Court Opinion, 11/29/22, at 3–4.

Again, Brevard argues that the Commonwealth did not prove the second requirement of a valid inventory search. Brevard contends that Officer Susalla's testimony could not establish that Officer Roznick conducted the search in accordance with a reasonable, standard policy, because Officer Susalla did not watch the search.[8] Brevard likens his case to others in which this Court found the evidence insufficient to conclude that police performed inventory searches pursuant to standard policies, without investigatory motives. *See, e.g.*, *Commonwealth v. Germann*, 621 A.2d 589, 593–95 (Pa. Super. 1993) (finding no inventory search where, among other factors, "there [was] no evidence that any valuable items were in plain view"). He argues that the evidence here, including the tow slip listing only items of contraband, shows that the police had an investigatory motive when Officer Roznick searched his vehicle.

The Commonwealth responds that the suppression court was free to credit Officer Susalla's testimony that he was present when Officer Roznick conducted the search pursuant to departmental policy. It acknowledges that Officer Susalla did not see the exact position of the gun and backpack inside

---

[8] Brevard argues that, based on Officer Susalla's admission that he was not watching Officer Roznick search his vehicle, the record does not support a finding that he was watching. He cites *Commonwealth v. Martin*, 253 A.3d 1225 (Pa. Super. 2021), where this Court reversed a denial of suppression after a suppression court had relied only on an officer's testimony on direct examination but where the officer recanted on cross. *Id.* at 1229–31.

- 11 -

the vehicle; however, it suggests that his testimony was sufficient to establish that Officer Roznick was not rummaging in search of evidence of a crime. Because Officer Susalla testified that any other personal items in Brevard's vehicle were of so little value that they did merit inclusion on the tow slip, the Commonwealth argues that the tow slip supports a conclusion that the inventory search was valid. It echoes the suppression court's reasoning that because officers work together, the court could infer that the search was proper.

We conclude that the Commonwealth's evidence at the hearing was insufficient to demonstrate that the police conducted a reasonable inventory search pursuant to their standard policy. First, there was sparse evidence about what the Edgewood Police Department policy on inventory searches said about the scope and manner of inventorying an impounded vehicle. No written policy was introduced into evidence. Officer Susalla had reviewed the policy but did not remember its "exact verbiage." He did not say how an inventory should be conducted pursuant to the policy. The only details about the requirements of the policy were Officer Susalla's testimony about which items should be listed on a tow slip. This limited evidence effectively precludes any analysis of whether the departmental policy at issue was constitutionally reasonable. **Lagenella**, 83 A.3d at 102 (citing **Opperman**, 428 U.S. at 375)).

Second, even assuming that the department had a reasonable, standard policy, the evidence did not show that the search was conducted in accordance with that policy, in good faith, and without an investigatory motive. **Id.** at

103. Officer Susalla did not watch Officer Roznick search Brevard's vehicle. He did not testify where Officer Roznick looked in the vehicle, where the contraband was located, or whether any items were in plain view—all factors that a court "must consider" in determining whether the search was being done to safeguard Brevard's possessions or to uncover evidence of a crime. ***Hennigan***, 753 A.2d at 256. Officer Susalla was unable to recall whether the vehicle contained non-contraband items like a pendant, keyboard, and tools. Thus, the evidence does not support a finding based only on Officer Susalla's direct examination that the vehicle's remaining contents were "small personal items, nothing of value." Moreover, the tow slip that Officer Susalla completed lists only a stolen gun and a backpack of marijuana, neither of which are property that a vehicle owner would likely seek to recover from the police. Here, as in ***West***, the testimony of an officer who did not perform a search was insufficient to establish the particulars of a reasonable, standard policy or that the search complied with that policy. ***See West***, 937 A.2d at 529. As such, the Commonwealth failed to meet its burden to show that the evidence seized was the product of a valid inventory search.

The suppression court's reasoning, and the Commonwealth's claim, that the search was valid because police officers usually work together and rely on each other, is insufficient to justify the search here. N.T., 2/16/22, at 34. The implication is that while Officer Susalla did not personally search Brevard's vehicle, he could trust that Officer Roznick was performing a proper inventory search. In some cases, we may impute knowledge from one officer to another,

such as when assessing probable cause for an arrest. *See generally*
*Commonwealth v. Yong*, 177 A.3d 876 (Pa. 2018) (holding under the
"collective knowledge doctrine" that direct communication is not required
between officers working together who would inevitably arrest a suspect).
Here, however, Officer Susalla provided no reason why he would know where
Officer Roznick was looking in Brevard's vehicle or if Officer Roznick was
looking for evidence of a crime. Officer Susalla did not watch the search and
there was no evidence that the officers discussed the search as it was
happening. Thus, any findings about how Officer Roznick conducted this
search are speculation, not reasonable inferences from Officer Susalla's
testimony.

In sum, the Commonwealth failed to meet its burden to prove that the
search of Brevard's vehicle complied with a reasonable, standard policy and
was conducted in good faith without an investigatory motive. Officer Susalla's
testimony was insufficient to support findings about Officer Roznick's purpose
or procedure in performing the search. Accordingly, the suppression court
erred by denying Brevard's motion to suppress the evidence. We therefore
reverse the denial of Brevard's motion and remand for a new trial on those
charges for which Brevard was convicted.[9]

---

[9] This Court may affirm the denial of a motion to suppress for any valid reason
that is supported by the record. *See Commonwealth v. Bishop*, 217 A.3d
833, 839 (Pa. 2019). Notably, when police have authority to impound a
vehicle, we may assess whether items found in that vehicle would have been
*(Footnote Continued Next Page)*

_____

inevitably discovered in an inventory search. **_See, e.g._**, **_Commonwealth v. Bailey_**, 986 A.2d 860, 862–63 (Pa. Super. 2009). Under this doctrine:

> Evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

**_Id._** at 862 (brackets and ellipsis omitted) (quoting **_Commonwealth v. Gonzalez_**, 979 A.2d 879, 890 (Pa. Super. 2009).

For example, in **_Bailey_**, the police arrested a man and obtained consent to search his car; they found a gun in the center console. **_Id._** at 861. The suppression court found that the consent was coerced, rendering the "permissive search" illegal. **_Id._** at 862. However, the suppression court ruled that the police would have found the gun during an inventory search. **_Id._** We agreed: the police had statutory authority to tow the car, and they would have opened the center console as part of a valid inventory search. **_Id._** at 862–63.

Here, we first note that the Commonwealth did not argue inevitable discovery. If the Commonwealth had proceeded under the doctrine of inevitable discovery, such an argument would fail under the facts of this case. Under this analysis, we set aside the police error or misconduct and assume that police (1) would search Brevard's car only for a valid inventory purpose and (2) would follow a reasonable policy of conducting inventory searches.

**However, without evidence in the record, we cannot invent facts and assume that the gun was found in a location where police would look during a reasonable inventory search.** Doing so would relieve the Commonwealth of its burden to prove that the gun would have been discovered by lawful means. Unlike in **_Bailey_**, there was no evidence of where the gun was found inside the vehicle. The evidence at the suppression hearing did not establish that the police would inevitably have found the gun by lawful means. Therefore, under these facts, inevitable discovery would not provide an alternative basis to affirm the denial of Brevard's suppression motion.

Brevard's second issue challenges the sufficiency of the evidence to sustain his conviction at Count 7, driving while operating privilege is suspended or revoked. *See* 75 Pa.C.S.A. § 1543(a). The parties and the trial court agree that there was no evidence at Brevard's stipulated non-jury trial that Brevard's operating privilege was suspended or revoked. Our review of the record confirms this. We will therefore reverse his conviction at Count 7. Because the evidence at Brevard's first trial was insufficient to sustain this conviction, Brevard may not be re-tried for this offense on remand.

Judgment of sentence vacated. Denial of motion to suppress reversed. Conviction reversed at Count 7. Case remanded for new trial on Counts 2, 3, 4, 5, 6, 9, 10, and 19. Jurisdiction relinquished.

P.J.E. Bender votes to join. Judge Lazarus notes dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/5/2023