**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID ANDREW NEALY | : | |
| | : | |
| Appellant | : | No. 1021 MDA 2019 |

Appeal from the Judgment of Sentence Entered January 31, 2019,
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s):  CP-40-CR-0004591-2017.

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED NOVEMBER 17, 2020**

David Andrew Nealy appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder and criminal conspiracy.[1]

The trial court summarized the pertinent trial testimony in detail as follows:

> On the night of October 12, 2013, [Nealy] and Roberto Battle drove together to Outsiders bar in Wilkes-Barre, Pennsylvania, in a silver 2005 Mercedes C230 sedan that Nealy had borrowed from Michael Goodrich.  As the two men entered the bar, security overheard Nealy introduce Battle as his "shooter."  Multiple staff and patrons of the bar observed Nealy and Battle in the bar.  As the evening progressed, Battle fought with another patron of the bar, and was evicted by security.  Nealy left the bar shortly

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a) & 903(a), respectively.

thereafter, the two men departed together in the silver Mercedes, and proceeded to the residence of Shakim Varick and Jessica Fox. [Varick grew up with Nealy and Battle, and Battle occasionally stayed at Varick's residence. Battle knew where Varick stored a Keltec handgun in his home.] Battle entered the residence and removed Varick's Keltec handgun, loaded with Hornady Zombie 9mm ammunition, then returned to Nealy in the waiting Mercedes. Shortly after 2:00 a.m., Nealy and Battle drove back to Outsiders.

The victim, Michael Onley, was in Outsiders on the evening of October 12, 2013, taking promotional photographs for the bar. [Onley had several friends on the Outsiders security staff, and was known to them and other patrons for his work as a local DJ.] When the bar closed, Onley exited the building with patrons and staff, but lingered at the door where security [] typically congregated after they made a final patrol of the parking lot. As security was returning to the bar, [Nealy] and [Battle] drove past on Pennsylvania Avenue, and Battle fired multiple shots out of the passenger side window of the Mercedes into the parking lot and building. Dalair Edwards and Prince Rodriguez, bar security, heard gunshots and saw muzzle flashes coming from the passing silver sedan. Rodriguez, who testified that he could see the car clearly, identified it as the one in which Nealy and Battle left the club earlier. Security footage shows a passing car with muzzle flashes coming from the passenger window. When Edwards and Rodriguez returned to the bar entrance, they saw [the victim] lying on the ground with a gunshot wound to his head. Damien Pitters, a club patron in the parking lot when the shots were fired, saw the victim fall from a chair by the bar's door. Pitters, an army combat medic, moved to help, but despite efforts to revive [the victim], he died of the gunshot wound.

Following the shooting, [Nealy] and [Battle] drove together to the home of Jamie Compton, where several people were gathered. While there, the group learned that the victim had been shot. In response to this news, Battle laughed and said that he had "shot the place up." After leaving Compton's residence, Nealy and Battle returned together to Shakim Varick's residence sometime between 3:00 [a.m] and 3:30 [a.m.], where they encountered Varick and Jessica Fox. In response to Varick's questions, Battle told Varick that he and Nealy "did a drive-by" on

Pennsylvania Avenue, and admitted that he had used Varick's gun. [Upon learning this, Varick checked and saw that the gun was no longer in the nightstand. Two days later, Battle returned the gun to Varick, empty of bullets.] Nealy did not deny Battle's statement.

[Nealy], when testifying on his own behalf, denied knowing that [Battle] had a gun and intended to fire shots into Outsider's parking lot as staff and patrons exited the bar, but Nealy admitted to hearing those shots being fired and to abandoning the borrowed silver Mercedes after learning that [the victim] had been killed. Additionally, although Nealy expressed his remorse for [the victim's] death by the time the jury trial occurred, Nealy had not aided in the investigation of the crime by divulging to the police his knowledge of the night's events, or [Battle's] identity as the shooter.

Trial Court Opinion, 12/10/19, at 6-8 (citations and footnotes omitted).

A joint jury trial commenced on December 11, 2018, and, on December 17, 2018, the jury found both Nealy and Battle guilty of first-degree murder and criminal conspiracy. On January 31, 2019, the trial court sentenced Nealy to a mandatory life sentence on the first-degree murder conviction, and a consecutive seventeen to forty-year term of imprisonment on the conspiracy conviction.[2] Nealy filed a timely post-sentence motion in which he challenged the sufficiency and the weight of the evidence supporting his convictions. The trial court denied Nealy's post-sentence motion on June 4, 2019. This appeal followed. Both Nealy and the trial court have complied with Pa.R.A.P. 1925.

---

[2] The trial court imposed the same sentence on Battle. We affirmed his judgment of sentence on June 25, 2020. *See Commonwealth v. Battle*, ___ A.3d ___ (Pa. Super. 2020), No. 1094 MDA 2019 (unpublished memorandum.

On appeal, Nealy reiterates his challenges to the sufficiency and weight of the evidence supporting his convictions. We consider each challenge separately.

I.

With regard to his sufficiency challenge, our standard and scope of review are well settled:

> Initially, we set forth our standard of review:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted). "When the evidence offered to support a verdict is contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." **Commonwealth**

- 4 -

*v. Ortiz*, 160 A.3d 230, 234 (Pa. Super. 2017) (citation omitted). A claim challenging the sufficiency of the evidence is a question of law. *Id.*

We first address Nealy's challenge to sufficiency of the evidence supporting his convictions for first-degree murder and criminal conspiracy.

Our Supreme Court has summarized the following regarding first-degree murder:

> There are three elements of first-degree murder: [(1)] a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice an intent to kill. As set forth in the third element, first-degree murder is an intentional killing, *i.e.*, a willful, deliberate and premeditated killing. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. Whether the accused had formed the specific intent to kill is a question of fact to be determined by the jury.

*Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013) (quotation marks and citations omitted).

Here, the jury convicted Nealy of first-degree murder because he acted as Battle's accomplice and co-conspirator. This Court has described the concept of accomplice liability as follows:

> Two prongs must be satisfied for a person to be labeled an accomplice. First there must be evidence that the person intended to aid or promote the underlying offense. Second there must be evidence that the person actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. Further, a person cannot be an accomplice simply

- 5 -

based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the person intended to aid in the commission of the underlying crime, and then aided or attempted to aid. For purposes of accomplice liability, no agreement is required, only aid. With regard to the amount of aid, it need not be substantial so long as it is offered to the principal to assist him in committing or attempt to commit the crime. The least degree of assistance in committing the offense is adequate to sustain the finding of responsibility as an accomplice.

*Commonwealth v. Adams*, 39 A.3d 310, 324 (Pa. Super. 2012) (quotation marks and citations omitted). *See also* 18 Pa.C.S.A. § 306.

"To be guilty as an accomplice for first-degree murder, the Commonwealth is required to establish a specific intent to kill." *Commonwealth v. Jordan*, 212 A.3d 91, 95 (Pa. Super. 2019). "[A] defendant cannot be convicted of first-degree murder under a vicarious liability theory, such as accomplice or conspiratorial liability, unless the fact-finder determines, upon proof beyond a reasonable doubt, that the defendant personally harbored a specific intent to kill." *Id.* (citation omitted). Like the sufficiency standard cited above, the Commonwealth can establish accomplice liability by wholly circumstantial evidence. *Id.* Stated differently, the Commonwealth's evidence must establish that the accused "possessed the requisite intent to kill, even if [the jury] determined that he was not the person who actually pulled the trigger." *Commonwealth v. Murray*, 83 A.3d 137, 151 (Pa. 2013) (citation omitted).

In order to convict a defendant of criminal conspiracy, the Commonwealth must establish that: "(1) [he] entered into an agreement to

commit or aid in the commission of a crime; (2) he shared the criminal intent with that other person; and (3) an overt act was committed in furtherance of the conspiracy." ***Commonwealth v. Knox***, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." ***Id.***

We have further explained:

> As conspiracy by its nature is often difficult to prove due to the absence of direct evidence, cases examining the sufficiency of the evidence often look to the conduct of the parties and the circumstances surrounding their conduct which may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

> Among the circumstances that which are relevant, but not sufficient by themselves, to prove a [criminal] confederation are: (1) an association between alleged coconspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accursed to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

> Other circumstances which are relevant include post-crime conduct, such as flight, because it tends to establish consciousness of guilt. When combined with other direct or circumstantial evidence, that conduct may provide sufficient evidence to establish a conspiracy.

***Jordan***, 212 A.3d at 97 (quotation marks and citations omitted).

Here, the trial court explained why Nealy's sufficiency challenges were without merit:

In the instant case, the [trial] evidence was sufficient to support the jury's conclusion that (1) the victim . . . was unlawfully killed by a gunshot; (2) that the gunshot was fired by [Battle] from a car driven by [Nealy], his co-conspirator[;] and (3) that the shot struck the victim in the head, a vital part of his body, establishing a specific intent to kill. Additionally, with regard to the conspiracy between [Nealy] and [Battle], the evidence presented to the jury was sufficient to support the jury's conclusion that the two men (1) intended to commit or aid in the commission of the criminal act; (2) agreed to engage in the crime; and (3) committed an overt act in furtherance of the agreed upon crime. Because the foregoing evidence presented to the jury was sufficient to support [Nealy's] convictions for first degree murder and conspiracy to commit first degree murder, he is not entitled to appellate relief on this issue and his judgment of sentence should not be disturbed.

Trial Court Opinion, 12/10/19, at 9-10.

Our review of the record, in light of the applicable standards, supports the trial court's conclusions that sufficient evidence supports Nealy's first-degree murder and conspiracy convictions.

In arguing to the contrary, Nealy relies upon his own self-serving trial testimony. With regard to his first-degree murder conviction, Nealy asserts that the Commonwealth "failed to present sufficient evidence from which the jury could conclude beyond a reasonable doubt that the killing was committed with deliberation and premeditation" and failed to prove that he "had the requisite intent to kill." Nealy's Brief at 18. According to Nealy, because "[t]here was no evidence presented regarding what transpired between [him] and Battle prior to the shooting[,][t]he jury was compelled to rely upon

speculation and conjecture in order to conclude that [he] had the requisite intent for First Degree Murder." *Id.*

Nealy makes a similar claim with regard to his conspiracy conviction. Nealy asserts that "the Commonwealth failed to present sufficient evidence, aside from tenuous circumstantial evidence, from which the jury could conclude beyond a reasonable that [he] and Battle entered into an agreement to bring about the death of [the victim]." *Id.* Nealy once again avers that the jury had to resort to speculation and conjecture to conclude a conspiracy was established, since "the only evidence regarding the alleged conspiracy was that the parties were together that evening." *Id.*

Our review of the record refutes these claims. As noted above, the specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body. *Jordan*, 65 A.3d at 323. Although as part of his sufficiency challenge, Nealy asserts that Battle did not act with specific intent to kill, *see* Nealy's Brief at 29-31, when affirming Battle's judgment of sentence this Court concluded otherwise. *See Battle*, unpublished memorandum at 6 (concluding that Battle "possessed the specific intent to kill as he used a deadly weapon to shoot [the victim] in the head, a vital part of his body").

Nealy's related argument that there was no "transferred intent" is also meritless. According to Nealy, because "the Commonwealth failed to establish that Nealy or Battle had the intent to kill anyone . . . a verdict based on any purported transferred intent was based on insufficient evidence." Nealy's Brief

at 32.  Our Supreme Court has repeatedly held that an intended victim need not be identified in order to support a first-degree murder conviction.  *See*, *e.g.*, *Commonwealth v. Smith*, 862 A.2d 892, 895 (Pa. 2004) (concluding that acts of defendant and his accomplices in firing multiple shots into a crowd of people as they retreated to their vehicles after committing an armed robbery was sufficient to support first-degree murder conviction because one of the bullets struck a bystander in the head, killing him); *Commonwealth v. Gibson*, 688 A.2d 1152, 1158 (Pa. 1997) (holding evidence sufficient to support first-degree murder conviction when the defendant and his co-conspirators entered a bar intending to commit a robbery and fired numerous shots into the crowd, killing two patrons as the result of gunshot wounds to vital parts of their bodies); *Commonwealth ex rel. McCant v. Rundle*, 211 A.3d 460, 461 (Pa. 1965) (explaining that, "[i]f McCant, intending to kill, shot into a crowd, the resulting crime would be first degree murder even if he had never before seen his eventual homicidal victim").

In convicting Nealy as Battle's accomplice, the Commonwealth established that he aided Battle by driving the car.  In addition, following the shooting, Nealy abandoned the car used in the shooting and, and lied to police when they interviewed him.  *See* N.T., 12/11/12/17/18, 569; 606.  Although Nealy testified that he was not aware of Battle's intentions, he was only "present" at the time of the shooting, and he had reasons not to cooperate with the police with regard to the shooting, it was up it was up to the jury to

- 10 -

credit his testimony. ***Jordan***, 65 A.3d at 323. Given the guilty verdict, the jury clearly did not do so.

As to his conspiracy conviction, Nealy's sufficiency challenge is unavailing. Although Nealy characterizes the circumstantial evidence of an agreement between him and Battle as "tenuous," a guilty verdict may be based on wholly circumstantial evidence. ***Hansley***, ***supra***. A security guard testified at trial that he overheard Nealy introduce Battle to another member of the security detail as "his shooter." N.T., 12/11-12/17/18, at 57. Upon inquiry, Varick agreed with the Commonwealth's characterization that Battle told him "they put in the work," meaning they did a drive-by shooting. ***Id.*** at 219. Nealy did not deny Battle's statement to Varick. Once again, although Nealy asserts reasons why such testimony was unworthy of belief or subject to interpretation, the credibility of that testimony, as well as all of the other trial evidence—including the testimony Nealy provided—was within the exclusive province of the jury to determine. ***Hansley***, ***supra***.[3]

Thus, Nealy's sufficiency challenges are devoid of merit.

---

[3] In ***Battle***, this Court likewise rejected Battle's assertion that "the record is void of any proof that there was any shared criminal intent to shoot and kill [the victim." ***Battle***, unpublished memorandum at 6. Viewing the evidence from the joint trial in the light most favorable to the Commonwealth, we concluded that the evidence established that "[Battle] and Nealy entered into an implicit agreement by acting in concert to kill [the victim], [Battle] as the "shooter" and Nealy as his driver." ***Id.*** at 7.

II.

Nealy also challenges the weight of the evidence supporting his convictions. When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. **Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.**
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. **Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.**

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added). Absent an abuse of discretion, the trial court's decision will not be disturbed. *See Commonwealth v. Griffin*, 515 A.2d 865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest

- 12 -

unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007) (citation omitted).  By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." ***Id.***

In denying Nealy's weight claim, the trial court explained:

> In the instant matter, following this [c]ourt's opportunity to hear and see the evidence presented during the course of the five-day trial we conclude that the jury's verdict was *not* so contrary to the evidence as to shock one's sense of justice.  This conclusion was not based on prejudice, personal motivations, caprice or arbitrary actions.  We are confident that the record reveals that our determination does not represent an error of judgment, much less a manifestly unreasonable judgment, misapplication of the law, or an action that was the result of partiality, prejudice, bias or ill-will.  As such, [Nealy's] judgment of sentence should not be overturned based on his allegation that his convictions were against the weight of the evidence.

Trial Court Opinion, 12/10/19, at 12 (footnote omitted).  Our review of the record supports the trial court's conclusions.

Once again, Nealy's claims to the contrary are without merit.  Nealy avers that the trial court "abused its discretion in failing to adequately consider the weight of the evidence presented at trial."  Nealy's Brief at 19.  In essence, Nealy asks this Court to reassess the evidence and substitute our judgment for that of the trial court.  This is not a proper appellate function when considering a weight challenge.  ***Clay***, ***supra***.  Thus, Nealy's weight challenges likewise fail.

In sum, because our review of the record supports the trial court's conclusion that his sufficiency and weight challenges do not entitle him to relief, we affirm Nealy's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2020